This last case today is in re the Marriage of Paisley Waterkote, did I pronounce it correctly? Watercutty. Watercutty, okay, thank you. And it happens to be case number 4090741, for the appellant, Richard Ray, for the appellee, Donald Heck Jr., Mr. Ray. Thank you, Your Honor. May it please the court, counsel. Your Honor, basically, this case comes down to one issue, and that is whether a trial court abuses discretionary attorney's fees without any findings that those fees are either unnecessary or unreasonable. The second district has answered that question in the affirmative, stating that without making any findings as to reasonableness or necessity does constitute abuse of discretion. That was in re Marriage of Bennett. Of extreme importance in this case, I believe, Your Honor, is that in this case there was a written, valid, legal engagement agreement which satisfied all statutory constraints. While the appellee in his brief strives to make this a matter of quantum meriwit, courts in this state have stated that it's clearly not the case where such an agreement exists. The first district in re Marriage of Angeli said that unlike fee petitions and claims for quantum meriwit fees in which the trial court makes an independent valuation, where an express contract governs the compensation due an attorney, the hourly rate agreed to by the parties is the starting point of the court's analysis. The second district has also held – excuse me, that was second district. The Supreme Court of this state in People v. Kenyon stated that where a client and his attorney have an express contract for compensation, that contract will control the amount of compensation due the attorney from the client and quantum meriwit principles are not involved. The appellee cites in his brief seven factors, Your Honor, which have been used historically by the courts to evaluate attorney's fees. And while I believe that a review of the courts or the cases involved in those instances would show that those are primarily matters of quantum meriwit or where fees are being assigned to a third party, I would like to address them nonetheless. The appellee first asserts that the trial court had no evidence as to the attorney's skill and standing. The Illinois Institute of Continuing Legal Education did a review of case law and determined that, and I quote, a court rarely finds a particular lawyer's skill or expertise as lacking or insufficient. In this case, the attorney had appeared at numerous hearings before the trial judge, had submitted voluminous documents in the course of his 12-month representation. The trial judge had ample demonstration of the attorney's skill and at no time was it either stated or inferred either by the court, by my client or any other party, that counsel's representation was substandard. In addition, this attorney had previously appeared before the trial judge in a lengthy and complex domestic relations case and had won a judgment in that case. The appellee next argues that the court possessed insufficient evidence as to the nature of the case, the difficulty of questions, the importance of subject matter, and the responsibility involved in management of the case. These factors, Your Honors, were also well known by the trial judge. He presided over this case for two years, and I personally cannot think of anything more presumptuous than an attorney telling a trial judge who had been presiding over a proceeding for a two-year period what the nature of the case is or the questions involved in the case. Did you testify at the hearing on the petition for fees? I was not sworn, Your Honor. It was offered by way of argument. Should that affect how we evaluate it? No, Your Honor, and I will address that matter later in my argument. Okay. Thank you. Also, I would direct Your Honor's attention to the engagement agreement, a copy of which is contained in the brief. In Clause 6 of that engagement agreement states, Client's final bill will be based on hourly rate as set forth above and, in addition, the benefit resulting to the client, the skill and standing of the attorney employed, the novelty and difficulties of the question at issue, the amount and importance of the subject matter, time and labor required. So the client, when the client signed that engagement agreement, Your Honor, was well aware of the factors. How much were you paid in this case? $180 an hour, Your Honor. How much were you actually paid? How much did you get? If I may, Your Honor? Go ahead. Have a moment. Was it 9600? I guess I would defer to appellate's brief, Your Honor. 9600 and change? Let me find it if I might, Judge. That's what the appellate's case is brief, Your Honor. I don't have figures to dispute that. And you want an additional 3300? That's correct, Your Honor. And that's for? Fees and costs, including numerous trips to Quincy, where this case was held, my office being here in Springfield, to represent my client at those hearings. How much of that is cost? Your Honor, I do not have that figure readily available. I would be glad to. Was it presented to the trial court? As to cost? Yes. I directed the trial court's attention that numerous sums contained in the statements were costs incurred and not fees. And, Your Honor, I would find it a completely different situation had the trial court looked at these factors, made findings as to each factor, and found them lacking in some respect. But there were no findings made. The record clearly shows the trial court instead spent its time questioning the attorney on whether he was still practicing law and whether his website was active, if his telephone number had been taken down. The court had already approved the attorney's withdrawal, Your Honor. Now, once the court approves that, I believe it is patently unfair for the judge to then deny attorney's fees based solely on that withdrawal that he approved. The appellee also asserts that sufficient... So what are the interests of the client in this situation? Well, Your Honor, in this instance... And to what extent should the court be concerned about your unforced withdrawal by the client causing a doubling of costs to the client? Your Honor, I would be the first to admit that when the attorney withdraws that the client may incur additional fees in bringing a new attorney up to speed on the case. Is that something the trial court can properly consider? I believe it can, Your Honor, and I believe that when it was presented to the trial court that not only had I volunteered to Mr. Heck to travel to Quincy once he received the case files and to go over them with him at no expense to the client, once I had offered my client to reduce her fees by $1,000 to make up for any added costs she might have received by hiring Mr. Heck, those matters were well considered. Your Honor, regarding in your question... Let me back up. I would be... I believe that the court has to respect the client's right to contract. A signed contract controls the agreement only if there is no written contract or fees are sought from another party, as I believe the court looks at customary fees, which is, again, argued by the appellee. Also of concern, Your Honor, is the appellee's complete misrepresentation of the case, In Re Marriage of Salada, in which the appellee states in his case that no written contract or fee is required regarding customary fees, even if, in this case, there wasn't a written agreement and customary fees had to be addressed. Counsel, I'm not sure... Forgive me, I'm not sure if you answered my question about the extent to which the trial court may properly consider the extra expenses you've cost the client by withdrawing without the client's initiative in causing you to do so. I believe the court can consider that, Justice Stengel. Well, why not? As I've stated... Call it even and reduce your overall charge and say, in view of that, someone's going to be stuck for several thousand bucks and it should be you and not the client. Why is that unreasonable? It's not unreasonable, Your Honor. If the trial judge had looked at all the factors and stated, Mr. Ray, I believe that you've caused your client to incur extra costs by obtaining and I'm going to reduce your reward accordingly, I think that's within the trial court's discretion. However, I believe it's an abuse of that discretion to deny all fees and costs in total based on the fact that voluntary withdrawal was granted by the court. Well, what portion of the requested payment that you asked, would it not be an abuse of discretion for the trial court to deny on the basis you just mentioned? I don't know that I can put a definitive number on that, Judge. I don't think that it's $3,000, much of which is costs. I believe that that is not discretionary. Does the record show how much extra the client had to pay to Mr. Heck? The record indicates in Mr. Heck's brief how much the client paid Mr. Heck. How much was that? I believe in his brief he says $3,328. So not quite what you're asking for now. Isn't that correct? You're asking for $36,000 and the client paid Mr. Heck $33,000 and if we agree with you and reverse the trial court, essentially the client's costs will be doubled. It may, Your Honor, if the court, if Your Honor's reverse it and the trial court then determines that my entire fees and costs are warranted, that that would be true. Isn't that what you're requesting? I'm requesting that it be reversed and remanded. I believe that the court did not make any findings as to unreasonableness of the fees or unnecessary fees. Well, counsel, I'm not sure. Is it the absence of findings that is the basis of this appeal or the judgment rendered? I believe it's the absence of findings, Your Honor. Because normally unless there's some statutory requirement or maybe case law, trial courts aren't required to detail their decision. The trial judge in this case could have said it's the right emotions to die and got up and left. That's exactly what happened. Well, but there's nothing. I would argue. We don't, you know, we hear this often, this argument often, but it's still, you know, it's better practice perhaps and it's something that we encourage trial judges to do to share with us the thinking. But the absence of reasons isn't normally a basis to reverse. It's the judgment rendered and whether the record supports it or not. I understand that, Your Honor. And the trial court certainly has wide discretion in this matter. I'm not arguing that. But as the courts have also held that, that discretion is not unbounded. And to deny costs in particular and fees which were not found either unnecessary during the course of the representation or unreasonable, I believe is such an abuse as the Bennett court stated. As far as benefit to the client, I believe, Justice Stegman, you referred to that earlier. Let me state that. This court in the case of Shinn, this court in 2000, again, intermarriage of Shinn, the attorney did not provide actual contemporaneous records. She wrote down her hours about 90% of the time according to her testimony. And she presented this court with computer-generated documents that detailed the work she performed, when performed, who performed the work, total amount of hours, et cetera. And although the summaries were not made contemporaneous with the work performed, this court held that this information was adequate to determine a reasonable attorney's fees. In the instant case, work and cost was contemporaneously entered using a well-known respected computer program called Practice Master, which ties into another computer program referred to as TABS, which issued monthly billings, which are contained in the record and in agreement with the Shinn case. They detail the work performed, who performed the work, the total amount of hours spent, the amount billed for that month. And this information, I believe, Your Honor, as this court stated in Shinn, is certainly adequate to determine what attorney's fees are reasonable and necessary and what aren't and what the benefit to the client was during the attorney's representation. Finally, Your Honors, I would just submit that the reasonableness requirement is intended to protect the public, certainly from unscrupulous lawyers who engage in conduct involving fraud, dishonesty, deceit, misrepresentation. But the reasonableness requirement is not created to relieve clients from their contractual obligations to pay for professional services that an attorney renders on behalf of a client. And it's not meant to hinder the rights of attorneys and clients to engage in a contract which outlines the agreed-upon value of the services to be rendered, such as the case here. And again, appellee cannot go both ways. At one point before the trial court, the appellee stated that everything was that I was dropping my client when everything was done and the case was ready to go to trial. Later in that same hearing, it was that he had to, or in his brief, that he had to start at the 1-yard line or 10-yard line, not the 50 or 30 or something. It can't be both ways, Judge. Either I performed absolutely no work of benefit to my client, in which case I shouldn't be paid in accordance with the contract, or the work I performed during the course of my representation was necessary and reasonable, which I would point out no one, including my client, ever argued at the time bills were submitted. She's given 30 days per my engagement agreement to contest any charges. No contest was ever made.  during the course of my representation, just as the work was performed by Mr. Schnack during his representation prior to my being hired on this case, he merely brought a motion before the court to convert fees to judgment. And the court said, fine, here's your judgment. As to my knowledge, no testimony was offered in that case regarding all the seven factors that Mr. Schnack now feels is mandatory for the court to hear. So the court evidently felt that Mr. Schnack, during his representation of about the same time period, led to benefits for the client because he ordered that he pay those fees. And I believe that the work I performed for the client as demonstrated in the statement submitted in the record similarly show a benefit to the client. And I believe it was abuse of the court's discretion to not voice any matter regarding either those seven factors or the engagement agreement or whether the amount was necessary or whether it was excessive, whether the contract was procured by fraud. Nothing of that was addressed. And I believe, as the Bennett Court believed, that when the court does so and completely denies attorneys fees absent any findings, that that is, as the Bennett Court said, abuse of discretion. We would ask that the case be reversed and remanded to the court for further proceedings. Thank you. Thank you, counsel. Mr. Peck. Thank you. May it please the court, counsel. Justices, why we are here is an appeal by Mr. Gray, essentially pro se, to point whether or not the court abused his discretion. I have not seen anything in his brief, factually, legally, or in his argument today that says that Judge Mark Drummond abused his discretion. I think the big problem here, quite candidly, is that Judge Drummond, when Mr. Gray announced, for whatever reason, because I wasn't privy to that, the record wasn't made in that area, Mr. Gray, when it was time to try this case, when it came down to trial presentation, Mr. Gray, in an off-the-record discussion with the judge, as is reported by the record, said to him, I can't do this. I can't go on. For personal reasons, I can't go on. It's quoted by Judge Drummond that it was said by Mr. Gray, I cannot give Ms. Waterkety, and I am paraphrasing, the representation that she deserved. Now, why he felt that way, or what he did, was not made of record, because, as is argued in my brief, once that was presented to Mr. Gray by Judge Drummond, Mr. Gray backed off. He said, Judge Drummond said, if you want this, let's put it on the record. Let's get Mr. Shearing over here, who Mr. Shearing was counsel for Mr. Waterkety, opposing counsel throughout the divorce. Now, I think it's important to note that we get this cost thrown up in here today, really for the first time. This is part of my cost. I have cost. Wasn't that argued to the trial judge? No, I don't think it was. When you look at this, I believe that what was argued to the trial judge is, I've got this money coming because, much the same as in his brief. I've got an attorney-client agreement. I've got it coming. What Judge Drummond said is on the record, and I'm not going to try to paraphrase, nor in any way deprecate either the ability or the reputation of Mr. Gray. I wasn't there. But I do know this, that the statements made by Judge Drummond was not very kind to Mr. Gray. And I don't know anything about that. I wasn't there. I'm not going to comment on that. The bottom line here is, is that he is now saying, I received, and it was glossed over in his brief and in his argument even, until Your Honor has asked the question, it's like I'm not paid anything. I went all the way from Springfield to Quincy, Illinois, and I didn't get paid anything. He got paid $9,662 in pennies. What he got paid, and for what? Certainly he was there, but a trial or a presentation, whether it's a criminal trial or whether it's a dissolution of marriage, is all preparing a case for the crescendo, the crescendo being the final trial. And when it got there, he couldn't pull the trigger, for lack of a better word. It seems like Mr. Gray is primarily complaining about the trial judge making no findings or rulings or explanation to go along with the ultimate decision he made. You were there for that. I was there for that. How come? I'm going to give you my impression and only my impression, that at that point in time, that perhaps, and I'm arguing perhaps, that Judge Duhman knew things or suspected things that I would not perpetuate. He gave him a chance to get Mr. Schering over there, let's make a record as to why this happened, why that didn't happen, that wasn't taken advantage of. He became, I don't want to say frustrated, but he became... Well, you know, we see Judge Duhman's stuff fairly frequently and he usually makes a pretty good record He usually makes a very good record. So what's going on here? I think that what happened here was that he did not want to go any further and I'm just surmising this, he did not want to go any further, he didn't want to make it to an open courtroom because this was a routine Thursday morning in our courthouse, there are many, many cases in the courtroom full of people, I think he didn't want to make any aspersions to anyone's abilities or characters, said that I deny it, got up and walked off. As Mr. Ray said, I think that he was frustrated, he had things perhaps, and again, just surmising, that he wanted to say that he didn't say. But as far as the Shen case, as far as the detailing of the decision, Judge Drummond made it clear, I believe, that you didn't do the work, that you didn't prepare this case, just because you submit the bill doesn't mean that, as in the Shen case, doesn't mean that you are, first of all, able to do this because you told me, and that's in the record. I can't do this. At the time that he withdrew, were there still custody issues, support issues, maintenance issues, was property distribution taken care of, or was that still an issue? There was some property distribution taken care of, but it was still an issue. So basically, at the time that he got out, nothing had been resolved? Not in finality. Had discovery been completed? There had been some discovery completed. Again, if you ask... Did you take exception to the $9,000 he was paid as being fair, too little, too much? If you're asking me my personal opinion, I'm going to give you my personal answer. This lady had paid Drew Schnock, not Schnack, but Drew Schnock $8,500. There was no question about that. Then Mr. Ray came in, and Mr. Ray billed. He got $9,600, and a lot of this, in my opinion, if you look at the record, was unnecessary. I didn't argue it. You asked me the question. I didn't argue it. I started to say, before Justice Turner asked me the question, that you may ask five people how to get to this courthouse from the Capitol. They may give you ten different ways. That doesn't mean my way is different than his. But I can assure you that the way I would have handled this case would have been tried before Mr. Ray did, and it was, in my opinion, a lot of unnecessary delay. Are you arguing today that he's not entitled to at minimum reimbursement of his cost? I think he's been reimbursed his cost. I think he's been substantially and adequately paid with his $9,600, and I don't think he is entitled to one dime. His cost, as he's already said, he has agreed to come to Quincy, Illinois and help me in this case. I didn't ask for his help. I didn't want his help. I didn't get his help. The bottom line here is if he can come there from the time, and I think we've got to narrow this down, this is only for, as I put in the brief, this is only for a very narrow window of opportunity. During this time, these fees were not for the entire built up over, and these weren't paid. These were for a period of time that were, in essence, set forth in the brief, and they weren't, I guess they were billed, but I don't know, and I certainly don't concede for the purpose of argument, nor for the purpose of the law, that they were reasonable or necessary, and in fact, if you look at the billing that he submitted, the costs involved are minimal. And I think, as I've already argued here this afternoon, that when you say cost, that's the first time cost was set. So I ask the court, when you look at this matter, and you look at the record, Mr. Ray argued here before you, well, the judge was worried about the website. Well, if you look at the record, what the judge was talking about was, again, and I apologize, I cannot give you any facts, because I wasn't in this meeting in the law library, but at some point in time, I guess he must have been told the judge that Mr. Ray was going to close his office. I believe, and I will stand corrected by Mr. Ray, first of all, he hadn't closed his office when we argued this. He was still arguing, excuse me, still in the process of closing his office. And then this website thing, was that Judge Drummond, on his own, not at some behest of mine, not at some even request, got on the internet and found that his website was still up and operating. That they went back and forth in this colloquy between Ray and Judge Drummond. That's what he was asking, because I think he was concerned about, why did you get out? What is his personal reason? And to my knowledge, this date was never given. So I asked the court to affirm Judge Drummond, there has been no abuse of discretion here. It's the old adage, hindsight's always 20-20, as Justice Steigman already said, he doesn't have to give a reason. A trial judge does not have to give a reason. Many of them don't. I know that the appellate court, and I think that Justice Steigman even said here, just a few minutes ago, that Judge Drummond is usually real good about giving the reason, because he didn't certainly did not show that he abused his discretion, because he didn't, certainly doesn't show that he did not think this out. When a trial judge, when you're before, when you're writing your decision, and I'm saying this in argument, not certainly to preach to your honor, but he's not living in a bubble either. He uses his own discretions, he can use his own life experiences, and he had been a part of this long before I was, and I asked the court in light of all the facts, all the law, and the argument presented, to affirm Judge Drummond and deny his appeal. Thank you. Thank you, counsel. Rebuttal, Mr. Wray. Your Honor, again, appellee makes a statement to the court that at the time I withdrew, which was allowed by the trial court, it was time to try the case. And if it had been him, he'd have tried the case a lot sooner than I did. I would ask the court to ask itself then why it took Mr. Heck a year to go to trial and to get the matter resolved after he became attorney of record. Your Honor, this was a very complex case. It involved a husband who was part owner of Water Coddy Construction, a family owned business. There were custody issues. My client moved to Belleville. The judge ordered her to return the children to Quincy, to Adams County. We contested that. The financials were horrific to say the least. All this was turned over to Mr. Heck. And his statement is my year of representation for what? Well, I would ask him to actually look at the files I sent him and the court record, and I would strenuously object that my representation for a year was no avail. Many issues were addressed during that year. All your honors have to do is call up the court. It's on the website, Adams County, and look at the document for that case. Mr. Heck states that it's his personal opinion that the fees were unnecessary and he has no reason to assume Judge Drummond knew more. But the court record stated that I told the judge in open court, I said, your honor, as I represented the court at that time, there were personal reasons for my closing my office. Those issues led to closure of my office, as I told the court I anticipated. He then asked about the website. I responded, my website's still up, your honor. Don't ask me why, because there hasn't been a dime spent on it. You'd have to ask Lexis why it's still up. Regarding the phone number on the website, at the time you saw the phone number, I wish your honor would have called the number on the website, because you would have gotten the message that I am not accepting cases. I can't control when Lexis takes the website down. What bearing that had on whether the fees were reasonable and necessary, I know not. I did represent to the court that I was closing my office, which was totally true. It was down here on Capitol. Mr. Harder now resides there. And that I did not have the assets that I felt were necessary to give proper representation on a continuing basis to my client, given the complexities of this case. I was losing my paralegal. I was losing my online legal research. I felt that I couldn't provide her with the type of representation that she deserved in such a complex case. And to not have attempted to withdraw, or filed a motion to withdraw, I believe would be against ethical rules of this state, if I believe I cannot afford her the representation which is necessary for her to prevail. And one thing I, my time is brief, one thing your honors I didn't address in my initial, and I believe it's important, that when Mr. Heck talks about the law, and there's no basis in law, I would ask your honors to look at the case Mr. Heck cites for an in-ray marriage of Thomas Salata, the second district case, which Mr. Heck cites in his brief as standing for the proposition that expert testimony must be offered in the way of reasonable attorney's fees, when in fact, to quote the Salata case, the trial court erred in dismissing the petition on the ground the attorney failed to present an outside expert to testify. Since no outside expert is required as a matter of the petition. Judgment as to what the law stands for and what current law is I would leave to the court's examination. I thank the court for it's time. Thank you counsel. The case is submitted and the court stands in recess until further call.